IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RICHARD J. GUSTAFSON                                                                                          PLAINTIFF

V.                            Civil No. 2:23-cv-02013-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                           DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Richard Gustafson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.      Procedural Background

Plaintiff filed his applications for DIB and SSI on August 12, 2020[1], alleging disability since May 17, 2019, due to hypertension, arthritis, carpal tunnel syndrome ("CTS"), high cholesterol, restricted movement in the right arm with a history of multiple surgeries, issues with the right hip resulting in hip replacement surgery, and anxiety disorder.  (ECF No. 8, pp. 114, 118, 144, 149, 259-274, 298, 314-315).   An administrative hearing was held telephonically on December 15, 2021.  (*Id*. at 52-84).  Plaintiff was present and represented by counsel.

---

[1] Plaintiff filed a prior application for Title II benefits in December 2015, resulting in a final unfavorable decision by Administrative Law Judge, Clifford Shilling on November 28, 2017.  (ECF No. 8, pp. 88-111).

Born in August 1973, Plaintiff was 45 years old on his alleged onset date and possessed a General Equivalency Diploma ("GED"). (ECF No. 8, pp. 31). He had past relevant work ("PRW") as a tank truck driver, heavy truck driver, and pallet builder/nailing machine operator. (*Id*. at 31, 123-124, 154, 300, 305-313).

On January 20, 2022, the Administrative Law Judge ("ALJ"), Harold Davis, identified Plaintiff's hypertension, degenerative joint disease ("DJD") of the hips - status post left hip arthroplasty, DJD/degenerative disk disease ("DDD") of the cervical spine, torn right rotator cuff - status post repair, and carpal tunnel syndrome ("CTS") - status post release on the right as severe impairments, but he concluded the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF No. 8, pp. 23-25). Despite his impairments, ALJ Davis found the Plaintiff retained the residual functional capacity ("RFC") to perform light work with occasional climbing, balancing, crawling, kneeling, stooping, crouching, and overhead reaching. (*Id*. at 25). With the assistance of a vocational expert ("VE"), the ALJ ultimately decided there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including conveyor line bakery worker, ticket taker, and final inspector. (*Id*. at 32).

The Appeals Council denied Plaintiff's request for review on November 25, 2022. (ECF No. 8, pp. 5-11). Plaintiff subsequently filed this action on January 27, 2023. (ECF No. 2). Both parties have filed appeal briefs (ECF Nos. 10, 12), and the matter is ready for Report and Recommendation.

## II.  Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial

evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder will only consider Plaintiff's age, education, and work experience in the light of his residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

Plaintiff raises four issues on appeal: (1) whether the ALJ fully and fairly developed the record; (2) whether the ALJ erred at Step Two of the sequential evaluation by not performing the psychiatric review technique; (3) whether the ALJ properly considered the Plaintiff's subjective complaints; and (4) whether the RFC determination is supported by substantial evidence. Following a thorough review of the record, the undersigned agrees that the RFC determination lacks substantial support in the record.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his RFC, but the ALJ ultimately determines the RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations." *Vossen*, 612 F. 3d at 1016; *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); and *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, it must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Here, the Plaintiff has a significant orthopedic history, including left hip pain dating back to at least 2019, for which pain management and physical therapy were initially prescribed. (ECF No. 8, pp. 399-402, 405-410, 516-520, 522-526). April 2020 x-rays of his hips showed mild bilateral arthritic change and equivocal subtle changes of osteonecrosis[2] in the left femoral head. (*Id*. at 421-422, 557, 559). Similarly, x-rays of his cervical spine showed multi-level degenerative marginal spondylosis, especially anteriorly at the C5-6, C6-7, and C7-T1 levels, with mild to moderate degenerative disc space narrowing at the same levels and degenerative facet arthropathy on the left at the C2-3 level. (*Id*. at 419-422, 555-557).

In June 2020, the Plaintiff sought out emergency treatment for chronic hip pain. (ECF No. 8, pp. 394-397, 512-515). Non-steroidal anti-inflammatories had been unsuccessful, and he was awaiting a pain management appointment. An exam showed a normal range of motion in his left hip with decreased strength and tenderness. The emergency room ("ER") physician administered a Toradol injection and prescribed a Prednisone taper. Later that month, he followed up with advanced practice registered nurse, Christina Metcalf. (*Id*. at 388-394, 508-512). The Plaintiff reported no real improvement and, although he had an appointment with pain management the following month, he wanted a referral to orthopedics to get to the source of his problem. On exam, he exhibited pain with all range of motion and a limped gait. APRN Metcalf referred him to an orthopedist and refilled his maintenance medications to include Prilosec, Prednisone, Lovastatin, and Lisinopril. She also discontinued Celebrex in favor of Meloxicam.

---

[2] Osteonecrosis occurs when bone tissue dies due to a lack of blood supply. *See* Mayo Foundation for Medical Education and Research, *Avascular necrosis (osteonecrosis)*, *at* https://www.mayoclinic.org/diseases-conditions/avascular-necrosis/symptoms-causes/syc-20369859 (Last accessed December 8, 2023). It can cause tiny breaks in the bone and/or total bone/joint collapse. *Id*. Osteonecrosis is associated with long-term use of high-dose steroids and excessive alcohol consumption. *Id.*

When the Plaintiff presented for his orthopedic consult with physician's assistant, Benton Loggains in July, he was experiencing a significant degree of discomfort. (ECF No. 8, p. 389, 418-419, 507-508, 555). X-rays showed a loss of joint space with questionable avascular necrosis, and the Plaintiff continued to walk with a noticeable limp. On exam, he exhibited minimal internal and external rotation and limited flexion. PA Loggains ordered a fluoroscopic-guided hip injection through Interventional Radiology, prescribed physical therapy, and referred him to an orthopedic surgeon, Dr. Greg Jones.

On July 31, 2020, APRN Metcalf granted Plaintiff's request for a Prednisone refill. (ECF No. 8, p. 387). And he received his steroid injection in early August. (*Id*. at 416-418, 553-555).

Plaintiff began physical therapy in mid-August 2020. (ECF No. 8, pp. 381-387, 460-462, 498-499, 500-505). Physical Therapist, Blake Beck noted a limp on the left, decreased hip flexion/extension throughout the gait cycle, weakness in the hip flexors, and tightness in the left piriformis and bilateral hamstrings.

In September 2020, Dr. Greg Jones evaluated the Plaintiff for deteriorating hip pain, noting that he had previously treated him for multiple upper extremity issues. (ECF No. 8, pp. 459-460, 497-498). Plaintiff rated his pain as a 9 on a 10-point scale, walked with a significant limp, and exhibited markedly limited internal and external rotation. No new x-rays were ordered, but Dr. Jones noted a mild degree of developmental dysplasia with a diminished center angle. Noting that the Plaintiff had failed conservative management, Dr. Jones recommended left hip arthroplasty (replacement). He noted, "[i]f it gives him a good leg to stand on, maybe we will be able to hold off on the right."

On September 29, 2020, the Plaintiff advised APRN Metcalf that he was doing well on his current medication regimen. (ECF No. 8, pp. 493-496). He was scheduled for hip replacement

surgery in December but needed refills of his maintenance medications, including Prednisone and Meloxicam.

In early December 2020, Dr. Jones performed a total left hip replacement due to progressive arthritis and avascular necrosis involving the superior femoral head. (ECF No. 8, pp. 472-485, 535-537, 618-632). By mid-December, Plaintiff had begun physical therapy. (*Id*. at 612-618). And, on December 21, 2020, during a Telemed appointment with APRN Metcalf, the Plaintiff indicated Dr. Jones advised him to be screened for rheumatoid arthritis ("RA"). (ECF No. 8, pp. 608-611). APRN Metcalf decreased his Prednisone dosage, as requested, and ordered labs to screen for RA.

On December 30, 2020, PT Beck noted the Plaintiff had not been performing his home exercise program, as he had not yet had his stitches removed. (ECF No. 8, pp. 605-607). He ambulated without an assistive device but exhibited a significant limp. Seven days later, PT Beck documented an improved gait. (*Id*. at 645-647). At that time, the Plaintiff rated his pain as a 3-4/10 and was progressing well with improved strength and motion. However, he continued to experience limited abduction.

Plaintiff returned to Dr. Jones' office on January 27, 2021, reporting excellent post-surgical pain relief and the ability to get around well. (ECF No. 8, pp. 665-666, 668). Unfortunately, his wife had recently fallen and broken her ankle. Lifting and assisting her placed more strain on his back and hip, resulting in generalized soreness. X-rays of the pelvis and lateral left hip showed excellent bone implant interface with a tripolar in an anatomic position without heterotopic ossification subsidence or evidence of fracture. After advising the Plaintiff regarding activity precautions, Dr. Jones indicated he would repeat the x-rays when the Plaintiff returned in six months.

In early February 2021, PT Beck discharged the Plaintiff from physical therapy, noting he had completed all his therapy goals and was able to ambulate without deficit. (ECF No. 8, pp. 663-665). In fact, he was able to walk up and down a flight of stairs. However, when the Plaintiff followed-up with APRN Metcalf the following week, he requested a refill of his pain medication, rating his pain as an 8/10. (*Id*. at 660-663). APRN Metcalf refilled the Norco.

On February 22, 2021, the Plaintiff reported persistent left hip pain for which he wished to resume pain management. (ECF No. 9, pp. 656-659). Noting no evidence of diversion and compliance with his previous prescriptions, APRN Metcalf agreed to prescribe Norco for a diagnosis of arthritis in the left hip.

In June, the Plaintiff returned for pain management, reporting issues with neuropathy in his hands and right foot. (ECF No. 8, pp. 680-685). APRN Sherilyn Bennett agreed to provide him with a neurology referral for a diagnosis of primary osteoarthritis of both hips.

During his follow-up appointment in September 2021, the Plaintiff indicated that he was doing well on Norco, as it allowed him to perform his activities of daily living and kept his pain at a 2-3/10. (ECF No. 8, pp. 674-679, 686-691). Noting him compliant, APRN Metcalf refilled his Norco. However, after failing a urine drug screen, APRN Metcalf indicated that she would no longer be able to refill his Hydrocodone prescription. (*Id*. at 692, 694, 696, 698, 700).

On December 8, 2021, in follow-up for a "host of orthopedic issues," Dr. Jones noted progressive joint space narrowing and arthritic change in the unoperated right hip; chronic hand problems resulting from CTS, despite surgical correction on the right, limiting his ability to use his hands; multiple surgical procedures and revisions to his right shoulder resulting in post-traumatic arthritis, post-traumatic arthritis in the right ankle following surgical correction of injuries, and morbid obesity. (ECF No. 8, pp. 707-710). Plaintiff exhibited limitations in his

forward flexion and bending, pain and crepitance with range of motion in his unstable right shoulder, swollen hands with diminished grip strength in the wrists, and an antalgic gait. Dr. Jones opined that these impairments, especially his severe lumbar stenosis, disk problems, ankle injury, hip replacement, and morbid obesity would render him capable of performing only the most sedentary jobs.

In a letter to Plaintiff's counsel dated December 29, 2021, Dr. Jones reiterated his opinion that the Plaintiff was limited to only the most sedentary jobs. (ECF No. 8, pp. 39-40). Further, he indicated that even sedentary and repetitive upper extremity use would be quite difficult. Due to the Plaintiff's multiple left shoulder operations with post-traumatic arthritis, he would continue to experience a decreased range of motion and strength into "perpetuity," limiting his ability to reach overhead and lift even five pounds. Dr. Jones also explained that the Plaintiff's left hip remained less than functional, despite surgery, as he was limited regarding bending, flexing, and squatting. He also had severe arthritis in the right hip and significant post-traumatic ankle arthritis limiting his ability ambulate. Further, Dr. Jones opined that the Plaintiff's CTS would limit his physical dexterity and fine motor use of his hands, and his cervical and lumbar abnormalities would impact his balance, ambulatory, standing, and sitting tolerance, as well as his ability to drive.

Despite this evidence, the ALJ adopted the RFC assessments of the non-examining agency physicians, concluding that the Plaintiff could perform light work with occasional climbing, balancing, crawling, kneeling, stooping, crouching, and overhead reaching. (ECF No. 8, pp. 120-123, 151-153). As the overall record does not provide sufficient support for this level of work, remand is necessary to allow the ALJ to reconsider the Plaintiff's RFC. *Biestek*, 139 S.Ct. at 1154 (defining substantial evidence). While we do note that Dr. Jones' ultimate opinion that the Plaintiff was disabled is an opinion reserved to the Commissioner, this does not negate his functional

9

medical findings that do find support in the record. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, . . . is not the type of 'medical opinion' to which the Commissioner gives controlling weight."). Accordingly, on remand, the ALJ should reconsider the Plaintiff's ability to sit, stand, walk, climb, balance, crawl, kneel, stoop, crouch, lift/carry, and reach overhead.

## IV. Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of December 2023.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE